IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALISHA KOENIG,

        Plaintiff,                    No. CIV S-06-2033 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.                <u>ORDER</u>
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////
/////
/////
/////
/////

1

I. Factual and Procedural Background

In a decision dated March 24, 2006, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of cyclothymic disorder, histrionic personality disorder and borderline intelligence functioning but these impairments do not meet or medically equal a listed impairment; plaintiff is not credible; plaintiff has the residual functional capacity to perform simple tasks with minimal contact with others consistent with unskilled work; plaintiff has no past relevant work; using Medical-Vocational Rule 204.00 as a framework for decision making, there are a significant number of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

jobs in the national economy available to plaintiff; and plaintiff is not disabled.  Administrative Transcript ("AT") 17-20.  Plaintiff contends the ALJ committed error at step two of the sequential analysis, improperly analyzed the medical evidence, improperly discredited plaintiff and failed to consider a third party statement, and should have utilized the services of a vocational expert.

II.  Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

III.  Analysis

    A.  Severe Impairment

        Plaintiff contends the ALJ improperly assessed the severity of her impairments. An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two of the sequential analysis, see note 1 supra, is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

        Plaintiff argues the ALJ failed to recognize as severe impairments a number of diagnoses, including bipolar disorder, PTSD, depressive disorder and borderline personality traits. While plaintiff is correct that the record contains various diagnoses of plaintiff's mental condition, a mere recitation of medical diagnoses does not demonstrate how each of the conditions included in that recitation impacts plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not an impairment make. The ALJ here reasonably relied on the findings of consulting examining psychologist Dr. Williamson who conducted a full record review and administered a full panoply of diagnostic tests, concluding plaintiff likely has cyclothymic disorder, and has histrionic personality disorder and borderline intelligence functioning. AT 17-18, 227. The work limitations plaintiff asserts are associated with the excluded diagnoses were acknowledged by Dr. Williamson and incorporated as appropriate into the mental residual functional capacity assessed by that examiner. AT 221-229. The ALJ's only finding severe impairments of cyclothymic disorder, histrionic personality disorder and borderline intelligence functioning at step two, does not indicate that the ALJ artificially

1 excluded consideration of any significant work limitations throughout the sequential analysis.
2 The ALJ did not err in the step two analysis.

      B.  Medical Opinions

Plaintiff also contends the ALJ improperly disregarded opinions in the mental health records and minimized functional limitations assessed by Dr. Williamson.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

1    Plaintiff contends the ALJ ignored GAFs[2] assessed by her mental health providers
2 and by Dr. Williamson, an examining consulting psychologist.  AT 139 (GAF of 45 assessed in
3 January 1998), 173 (GAF of 40 assessed in May 2002), 228 (GAF of 58 assessed by Williamson
4 in September 2005).  Although the ALJ did not specifically address the GAFs cited by plaintiff,
5 there was no error in failing to do so.  The GAF does not correlate to the severity assessments
6 utilized in Social Security disability determinations.[3]  Moreover, while assessing a GAF of 58,
7 Dr. Williamson assessed plaintiff as having the residual mental functional capacity to do work-
8 related activities consistent with simple tasks with minimal contact with others, as found by the
9 ALJ.  AT 18, 228-230.  With respect to the GAFs of 40 and 45, impairment in the inability to
10 work is only one example of the level of adaptation meriting such a rating.  There is no indication

---

[2]  GAF, or Global Assessment of Functioning, is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A GAF of 31-40 indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)."  Id.  A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers).  Id.

[3]  65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

   Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.
   Response: We did not adopt the comment.  We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information."  To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations.  The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings.

1  in the record that the GAFs of 40 and 45 were based on an inability to work.[4]  AT 139, 173.  In
2  addition, Dr. Williamson specifically called into doubt these assessments, noting that the mental
3  health documents from the general assistance program did not set forth any data upon which the
4  assessments were predicated and that the examiner from Sacramento County Mental Health
5  expressed incredulity that plaintiff in fact experienced all the symptoms she endorsed.  AT 19,
6  140, 221, 222.  The ALJ did not improperly disregard implicit opinions as expressed in the GAF
7  assessments.
8          Similarly, the ALJ did not improperly disregard statements in the general
9  assistance records that plaintiff was unable to work.  Although there is a statement in the general
10 assistance program records that plaintiff is permanently unable to work, there is also a statement
11 that plaintiff is only temporarily unable to work.  AT 174, 177.  The latter statement was made by
12 a physician, the former opinion by a licensed clinical social worker.  As discussed above, the
13 opinion of a physician is entitled to greater weight than that of other sources.  Moreover, there is
14 no indication in the record that determinations of work capabilities made for purposes of state
15 general assistance programs in any way correlate to the social security disability determinations.
16 See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir.
17 1988) (in context of state workers' compensation system, medical reports of disability are not
18 directly applicable to Social Security disability determinations because of the different standards
19 applied).
20 /////

---

[4] Moreover, the GAF of 40 was assessed by a licensed clinical social worker.  Social worker's reports are considered "other sources" of information, rather than an "acceptable medical source."  20 C.F.R. §§ 404.1513(a),(e) & 416.913(a), (e).  Similar guidelines apply when weighing conflicting opinions from "acceptable medical sources."  See 20 C.F.R. §§ 404.1527, 416.927.  Accordingly, the opinions of physicians and licensed psychologists, both "acceptable medical sources," have the same status when assessing weight.  No specific guidelines exist for weighing opinions from "other sources."  Accordingly, opinions from "other sources" are given less weight than opinions from "acceptable medical sources."

1    Plaintiff also asserts the ALJ minimized functional limitations assessed by Dr.
2 Williamson.  While plaintiff is correct that the ALJ did not reiterate word for word the
3 conclusions of this examining psychologist, the ALJ did not improperly characterize the
4 functional limitations assessed by Dr. Williamson.  Compare AT 19 with AT 228.  The ALJ
5 properly found the functional limitations assessed by Dr. Williamson to be consistent with
6 unskilled work with minimal interaction with others.  AT 19; Social Security Ruling 85-15
7 (unskilled jobs ordinarily involve dealing primarily with objects, not people).  There was no error
8 in the ALJ's assessment of the medical evidence.

9    C.  Credibility

10    Plaintiff further contends the ALJ improperly discredited her testimony.  The ALJ
11 determines whether a disability applicant is credible, and the court defers to the ALJ's discretion
12 if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94
13 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility
14 finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d
15 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific,
16 cogent reason for the disbelief").

17    In evaluating whether subjective complaints are credible, the ALJ should first
18 consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947
19 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,
20 the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,
21 medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:
22 (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
23 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a
24 prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d
25 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR
26 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff testified that she was too slow, both mentally and physically, to work. AT 242-244. Plaintiff complained of back and ankle problems. AT 245. Plaintiff also testified that sometimes she would just forget to show up for work and then would be fired. AT 250. The ALJ found plaintiff's assertion that she was unable to perform any work not credible. In doing so, the ALJ considered plaintiff's activities of daily living, of child care, housework and volunteer activities, to be consistent with the ability to perform unskilled work with minimal interaction with others. AT 18, 19, 223, 224. The ALJ also noted plaintiff's tendency to make contradictory statements and to exaggerate. AT 18, 19, 223. The ALJ also factored into the credibility analysis plaintiff's lack of treatment for her allegedly disabling back and ankle problems. AT 18, 245. The factors considered by the ALJ all were valid and supported by the record. The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

D. Laywitness

Plaintiff contends the ALJ improperly ignored the third party statement of plaintiff's friend, Ms. McDermott. AT 80-85. "[L]ay witness testimony as to a claimant's

9

symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919; see also Stout v. Commissioner SSA, 454 F.3d 1050, 1056 (9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it can confidently conclude no reasonable ALJ, when fully crediting testimony, could have reached different disability determination).

There is no discussion by the ALJ of the third party questionnaire nor is it apparent from the opinion that the ALJ even considered the questionnaire. Upon careful review of the statements in the questionnaire, however, the court concludes that any such omission was harmless. Even if Ms. McDermott's reports are fully credited, no reasonable ALJ would have reached a different disability determination. See Stout v. Commissioner SSA, 454 F.3d at 1056. The statements are consistent with the residual functional capacity assessed by examining and consulting psychologists and state agency doctors and as determined by the ALJ, which limited plaintiff to performing unskilled work with minimal interaction with others. AT 19, 145, 152-153, 169-170, 194-195, 228. There was no harm from the ALJ's failure to consider the third party questionnaire because it does not support plaintiff's allegations of disability.

E.  Grids

Finally, plaintiff contends that because she has significant non-exertional limitations, the ALJ should have utilized the services of a vocational expert instead of using the grids to find plaintiff not disabled. The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J.,

concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[5] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

The ALJ acknowledged that plaintiff's ability to perform work at all exertional levels was compromised by nonexertional limitations. AT 20. However, the ALJ, relying on the functional assessments of the record medical opinions, concluded plaintiff's nonexertional limitations would not significantly erode the full range of work if plaintiff were limited to unskilled jobs. AT 145, 152-153, 169-170, 194-195, 228. In doing so, the ALJ relied on Social Security Ruling 85-15, which notes that unskilled jobs ordinarily involve dealing primarily with

---

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

objects, not people.  AT 20.  That ruling also notes there are over 2,500 unskilled jobs that can be performed at the medium, light and sedentary exertion levels and that there are additional unskilled jobs available at the heavy exertion level.  SSR 85-15.  Under these circumstances, the ALJ properly relied on the grids, which administratively notice a significant number of jobs available to plaintiff.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross-motion for summary judgment is granted.

DATED: March 27, 2008.

_____
U.S. MAGISTRATE JUDGE

006
koenig.ss